# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | No. 08 CR 1019 |
| FRANCISCO MEJIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Defendant Francisco Mejia is charged in an indictment with nine counts relating to the transportation, possession, and receipt of child pornography, and one count of failing to appear before the court. Before the court is Mejia's pre-trial motion to suppress evidence obtained during the search of his apartment, along with all fruits of the search. The court concludes that although the search warrant incorrectly identified the residence to be searched as a single-family residence, and an evidentiary hearing would be required to determine whether the officers reasonably believed the warrant was valid when issued,[1] the inevitable discovery doctrine applies to the evidence discovered pursuant to the search. The court therefore denies Mejia's motion to suppress.

## I. FACTS

The following facts are undisputed by the parties unless otherwise indicated. Mejia was charged on August 26, 2010, with transportation, receipt, and possession of materials containing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1),

---

[1] The court is concerned, among other things, that the IP address identified the subject computer as located on the second floor.

(a)(2)(A), and (a)(5)(B).  The investigation by the Federal Bureau of Investigation that led to the charges began after an undercover officer used a peer-to-peer file sharing program to identify a user with files allegedly containing child pornography.  Based on information from the Internet Service Provider, the user's IP address was linked to the billing name "Irma Canas" and the billing address "4318 N. Albany Av Flr 2, Chicago, Illinois."  According to the government, FBI Special Agent Byron Militello then searched the Lexis Nexis Accurint database, which revealed that Irma Canas resided at 4318 N. Albany Avenue, along with four individuals with the last name of Mejia.[2]  From a location on the curb, Agent Militello conducted surveillance of the address from 2:00 p.m. to 3:30 p.m. on October 3, 2006, and took photographs of the residence.  He saw no activity at the building.  In his report on that date, he stated,

> The residence is a two-story house. . . . There are wooden stairs leading to
> the front door. . . . Next to the front door was a single white mailbox.  The
> numbers "4318" . . . were displayed across the top of the front door.  The
> rear of the residence had a detached garage . . . . Above the garage door
> were numbers in black coloring "4318."  The front of the residence was
> accessible by street.  The rear of the residence was accessible by an alley
> way.

On or about October 4, 2006, law enforcement agents used Illinois Secretary of State records to verify that Canas and the Mejias lived at 4318 N. Albany Avenue.  Agent Militello contacted a Postal Inspector, who reported that Canas and four members of the Mejia family received mail at the address and that the residence had one mailbox.  It is unclear whether the Postal Inspector was asked whether anyone else received mail at that address.

---

[2]     According to the government, Militello did not use the Accurint database in October 2006 to check whether it included information about multiple dwelling units at 4813 N. Albany Avenue.  The government reports that when it checked the database six years later, on August 20, 2012, that information was available. Whether it was available in 2006 is unknown.

On October 10, 2006, Agent Militello requested a search warrant for evidence of child pornography at 4318 N. Albany Avenue, Chicago, IL. The affidavit accompanying the complaint for the search warrant stated that the Special Agent's investigation had led him to an IP address owned by Irma Canas, located at "4318 N. Albany Av Flr 2." It then summarized Militello's efforts to verify the occupants of the residence. Magistrate Judge Keys issued a search warrant for "A Two Story Single Family Residence Located at 4318 North Albany Avenue," as described in the agent's report quoted above.

The FBI conducted a search of the property on October 12, 2006. Upon entering the front door of the building, the investigators discovered a vestibule with two doors that bore no names or numbers. The agents approached the door on the left. A resident answered, and advised the agents that that unit, the first floor apartment, did not belong to the Canas/Mejia family, but rather to the Cortez family. The agents then knocked on the door to the right. The door was opened by Roberto Mejia, who later identified himself as the building owner. The agents went up a flight of stairs to the second floor apartment. They confirmed that Irma Canas and four members of the Mejia family resided there. The defendant was questioned and his computer was seized.

## II. ANALYSIS

In addressing Mejia's motion to suppress, the court follows the framework set out in *Maryland v. Garrison*, 480 U.S. 79, 85 (1987), in which the defendant moved to suppress evidence on the grounds that a search based on an overbroad warrant violated the Fourth Amendment. The Supreme Court stated that "[i]n our view, the case presents two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed." *Id*. at 84.

The court will first address whether suppression of the evidence is required under *Garrison*, then turn to the government's alternative argument that the inevitable discovery doctrine prevents the application of the exclusionary rule in this case.

## A. Validity of the Search Warrant

Mejia argues that the initial search warrant was overbroad and invalid, because Judge Keys did not determine that probable cause existed to search each residential unit at 4318 N. Albany Avenue. The Fourth Amendment prohibits the issuance of a warrant that fails to "particularly describe[e] the place to be searched and the persons and things to be seized." *Id.* When a building has separate residences, the particularity requirement is satisfied only if the search warrant specifies the unit subject to search. *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005). "[A] distinct probable cause determination must be made for each unit." *United States v. Butler*, 71 F.3d 243, 249 (7th Cir. 1995); *see also United States v. Hinton*, 219 F.2d 324, 325-26 (7th Cir. 1955) ("For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each . . . apartment.").

There is no dispute that, in this case, the warrant failed to satisfy the particularity requirement because probable cause was not established for each apartment of the dwelling. An exception to the particularity requirement applies, however, if the officers seeking the warrant reasonably believed the residence was a single unit. *Garrison*, 480 U.S. at 85-86. In *Garrison*, police obtained a warrant for a floor of a residential building, under the mistaken belief that the floor contained only one apartment, when it in fact

contained two.  The fact that the warrant was subsequently revealed to be overbroad, however, had "no bearing on whether or not [it] was validly issued."  *Id.* at 85.

Mejia argues that law enforcement knew the search warrant for his residence was overbroad, because they knew or should have known that the property was a multi-unit dwelling.  As evidence that the nature of the dwelling was "evident," Mejia cites the fact that the building had "separate floors and separate entrances" and a "mail box with multiple listings," and the fact that Agent Militello received information linking the IP address to "4318 N. Albany Av Flr 2."  (Def.'s Mot. to Suppress 3-4, ECF No. 28). Mejia argues that law enforcement failed to provide Judge Keys with this information. He further argues that Agent Militello did insufficient due diligence to determine whether the building contained multiple units.

The court disagrees that Agent Militello failed to provide Judge Keys with all information known to him.  Mejia points to no information of which the agent was aware that was not included in the affidavit submitted in support of the warrant request.  But to gauge the reasonableness of the agent's conclusion that the building was a single-family residence, the court believes an evidentiary hearing would be required.  On one hand, Agent Militello observed the property and did see any activity indicating that there were multiple residences.  The building had steps leading to one front door, one house number, and one mailbox.  Information received from the Postal Inspector and the Illinois Secretary of State was consistent with the conclusion that one family lived at the address. On the other hand, the IP address suggested that someone lived on the second floor of the building, and the mailbox bore multiple names.  And available records from the phone company and the Cook County Recorder's office, which were not examined, would have

shown that residence contained three units (including a basement unit). The agent might also have discovered that there were multiple meters in the rear of the house. On the current record, the court cannot conclude that the steps Agent Militello took to verify the nature of the residence and the identity of its occupants were sufficiently diligent to support a reasonable belief that the dwelling was a single-family residence. *See, e.g.*, *Garrison*, 480 U.S. at 81 (police relied on an informant, an exterior examination of the building, and an inquiry of a utility company in reasonably determining that a floor of a building contained one apartment); *Guzman v. City of Chi.*, 565 F.3d 393, 396 (7th Cir. 2009) (warrant valid where officers relied on information from an informant and surveillance of a house in concluding incorrectly that it was a single-family home). Before ordering an evidentiary hearing, however, the court will address whether the inevitable discovery rule provides an alternate basis on which to deny Mejia's motion to suppress.[3]

## B. The Inevitable Discovery Doctrine

Under the inevitable discovery doctrine, the exclusionary rule is inapplicable where the government establishes by a preponderance of the evidence "that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). The Seventh Circuit has applied the doctrine where police, acting without a search warrant, opened a bag that they knew contained cocaine. *United States v. Tejada*, 524 F.3d 809, 813 (7th Cir. 2008). It distinguished that case from the run-of-mine case in which probable cause exists for a search by stating:

---

[3] Because the court's decision relies on the inevitable discovery doctrine, the court does not address the second issue identified by *Garrison*: the reasonableness of the warrant's execution. *See* 408 U.S. at 84.

"There isn't even the shadow of a doubt that had [the police] applied for a warrant to search the bag, knowing what they knew, the warrant would have been issued." *Id.*

Given that the Seventh Circuit has applied the doctrine to render admissible evidence resulting from warrantless searches where a warrant would "certainly" have been issued, the court concludes that the doctrine also applies to the fruit of searches conducted pursuant to an overbroad warrant, where a properly limited warrant would certainly been issued had it been requested and would have led to the discovery of the evidence. In *United States v. Sims*, the Seventh Circuit explained that the doctrine applies when the harm caused by an illegal search is "zero" because, "had the police complied with the Fourth Amendment the consequences for the defendant would have been exactly the same as they were. The search . . . would have been identical in scope, both as to places searched and things seized, to the search that the police did conduct. The defendant would have been no better off had the warrant complied with the Fourth Amendment." 553 F.3d 580, 584 (7th Cir. 2009).

That is precisely the case here. Had Agent Militello applied for a warrant to search only the second floor of 4318 N. Albany Avenue, the warrant would undoubtedly have been issued. Probable cause clearly existed for a search of the unit. Agent Militello presented evidence in support of the search warrant request demonstrating that child pornography was likely to be found on the second floor of the dwelling. Specifically, an undercover task force agent had connected to a computer containing child pornography files. Further investigation revealed that 188 files were available on the computer for downloading, and the agent himself downloaded two files. The IP service address of the computer was identified as "4318 N. Albany Av Flr 2." The evidence also established

that the owner of the IP address was Irma Canas. Additional records showed that Canas resided with the four Mejias at 4318 N. Albany Avenue. These "facts and circumstances [we]re sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime w[ould] be found" on the second floor, in the Canas/Mejia residence. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see also United States v. Vosburgh*, 602 F.3d 512, 526-27 (3d Cir. 2010) ("[S]everal Courts of Appeals have held that evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address."); *United States v. Craighead*, 539 F.3d 1073, 1080-81 (9th Cir. 2008) (probable cause for search existed where the IP address from which child pornographic images were shared was traced to the defendant); *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (probable cause where child pornography was transmitted over an IP address associated with a physical address); *United States v. Grant*, 218 F.3d 72, 73 (1st Cir. 2000) ("[E]ven discounting for the possibility that an individual other than [defendant] may have been using his account, there was a fair probability that [defendant] was the user and that evidence of the user's illegal activities would be found in [defendant's] home.").

Not only did probable cause exist for a search of the Canas/Mejia residence, but the magistrate judge had already concluded as much and issued a warrant based on essentially the same information. The new information discovered during the search did nothing to destroy that probable cause—it only made clear that the second floor was the appropriate target of the search. Thus, there is no question that a warrant for that apartment would have been issued had the officers requested an amended warrant. Had

the warrant been limited to the second floor, the same area would have been searched and the same evidence seized, and Mejia "would have been no better off." *Sims*, 553 F.3d at 584. Therefore the government has met its burden to establish by a preponderance of the evidence that the information Mejia seeks to suppress inevitably would have been discovered by lawful means.[4]

### IV. CONCLUSION

Despite the defect in the warrant authorizing the search of Mejia's residence, the inevitable discovery doctrine forecloses the application of the exclusionary rule to the evidence seized. Mejia's motion to suppress is therefore denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 24, 2012

---

[4]    *Tejada* could be read to render application for a search warrant unnecessary in any case in which the existence of probable cause is clear. The court cannot square such a rule with the warrant requirement of the Fourth Amendment, even though the court acknowledges that, if the existence of probable cause is clear, a defendant subject to a warrantless search would be no better off were a warrant secured. In the court's view, the importance of the warrant requirement from a constitutional perspective should not rest on whether or not it makes a difference in the case of a particular defendant.
        Probable cause is presumably clear in any case in which investigators can download child pornography from a computer with an identifiable IP address, tied to a specific physical location. Accordingly, *Tejada* would appear to permit the introduction of evidence obtained from warrantless searches in any such instance. The instant case does not require such a broad rule, however, because in this case, the magistrate judge had already approved a warrant, albeit an overbroad one, for essentially the same search that law enforcement conducted.